IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | Case No. 3:19CR00054-001 |
| | ) | |
| Plaintiff. | ) | |
| | ) | JUDGE JAMES G. CARR |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | SENTENCING MEMORANDUM |
| JORDAN COFFMAN, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

Now comes defendant, Jordan Coffman by and through his counsel, Attorney Merle R. Dech Jr. and respectfully requests that the Court fashion a sentence that is sufficient, but not greater than necessary, to accomplish the objectives set forth in 18 U.S.C. 3553 (a). In doing so, Mr. Coffman asks the Court to consider the following information contained in the attached Sentencing Brief in determining the final judgment to be imposed upon the defendant.

I. **STATEMENT OF THE CASE**

On October 21, 2019, the defendant Jordan Coffman entered a plea of guilty to the sole count of the indictment charging him with one count of Possession of child pornography in violation of 18 USC 2252 (a)(4)(B) and 2252 (b)(2).

Sentencing is scheduled for March 4, 2020.

II. **FACTUAL BACKGROUND OF THE CASE**

On February 25 and 28 2015, defendant using the user name "wtfistide" accessed child pornography posts on a website being investigated and monitored by the Federal Bureau of

Investigation (FBI) for child pornography activity as part of a nationwide FBI operation

On August 13, 2015, a federal search warrant was executed at defendant's residence located at 425 Center Street Huron, Ohio where he lives with his mother. Electronic devices were seized from the residence including defendant's Samsung Notebook computer, additional flash drives and an external hard drive. A forensic examination of those devices revealed child pornography consisting of 25 images and 13 videos depicting prepubescent children.

Defendant was indicted on February 6, 2019 and on February 14, 2019 arrested, arraigned and released on a $100,000.00 secured property bond. On October 21, 2019 defendant entered a plea of guilty to the sole count of the indictment.

### III. PERSONAL CHARACTERISTICS OF JORDAN COFFMAN
#### A. CURRENT

Defendant Jordan Coffman is a twenty-four (24) year old man (See PSI paragraph 34). Defendant currently resides with his mother at 425 Center Street Huron, Ohio with his mother. He is currently attending twice monthly counseling at the Firelands Regional Medical Center for a May 2019 for Post Traumatic Stress Disorder (PTSD) diagnosis. He is currently taking Fluoxetine (60 mg daily) for depression. Defendant is presently engaged to Katelynn Steinhour.

Defendant was released on February 14, 2019 with conditions of pre-trial release. Defendant has been in full compliance with all pre-trial release conditions.

#### B. PAST

The defendant is the only child of Laura Coffman who at the time of his birth was in Relationship with Kevin Roth. The parties separated before the defendant's birth. There was little if any support from the biological father growing up. In his place the paternal grandmother

sought visitation of the defendant. The relationship of the defendant and the paternal grandmother was not normal. (See letter from Laura Coffman). The grandmother ultimately introduced the defendant to his biological father without the mother's knowledge. The last visitation with the father happened around the age of eight, visitation was terminated due to the father being intoxicated at the time of visitation.

Defendant was close with his mother's family, especially his maternal grandmother and cousins. However, it was the companionship of a cousin which caused problems with the defendant of which he still suffers to this day. Defendant in May 2019 reported past sexual abuse by a male cousin starting around the age of seven (7) to age (9). It was around the time of the abuse that the defendant in his mother's words "became slightly withdrawn" and started having various physical and mental ailments. After numerous examinations defendant was diagnosed with Acid Reflux and Obsessive Compulsive Disorder (OCD). The OCD caused defendant to become a germaphobe and distant from others. In the fifth grade it was decided to withdraw defendant from public school and enroll him in an online school. At this point in his life defendant had no friends and basically grew up alone except for his cousins, which included the perpetrator. Throughout this period of time defendant continued to battle his OCD and also depression. Defendant continued with online schooling until the ninth grade when defendant withdrew from the online school he took the Ohio Graduation Test and missed a passing mark by two points.

When defendant turned sixteen (16), he obtained his first employment at Arby's restaurant. This employment allowed the defendant to get back into the public. Defendant was the offered employment at Gamestop. At the time this appeared to be a perfect fit for the defendant has he had great interest in video games. However, this employment was not what

defendant hoped it would be due to the actions of the defendant's manager. He then followed this employment by working at Target. At Target his OCD helped him in an unusual way in that his strive for perfection allowed to keep his area of the store orderly and neat.

In June 2016 (approximately 10 months following the raid by FBI) defendant was hired at Fin Feather Furr Outfitters in Milan, Ohio where his mother was employed. Defendant was hired to work in the gun sales department of said store. The Hiring Manager was impressed that had heart, honesty and personality. See letter of Laura Coffman. Defendant's enthusiasm and hard work led to defendant becoming the top gun salesman in the store. This led to the defendant working in the NICS office. He was involved in all aspects of the gun sales which included preparing and approving the federal forms required to purchase firearms to the FBI and ATF. Defendant also became responsible for reviewing the Federal Form 4473 of other gun salesmen for possible errors and training new employees in the gun department. Defendant was involved in stopping at least two illegal "straw' purchases. Upon knowledge of the indictment, defendant immediately resigned from his position at Fin Feather Furr Outfitters.

Defendant started seeing his current fiancée in 2016 and they became engaged in the summer of 2019.

Defendant disclosed the sexual abuse in May of 2019 and is attending counseling twice monthly and taking daily medication for depression.

Defendant has accepted responsibility for his actions and expresses deep remorse. (See PSI paragraph 10).

IV. STATEMENT OF LAW

    A. SENTENCING AND THE GUIDELINES

The United States Supreme Court in Gall v. United States, 552 U.S. 38, 49, 128 S. Ct.

586, 596 (2007).stated:

"As we explained in *Rita,* a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U.S., at 347 – 348, 127 S.Ct. 2456. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) *50 factors to determine whether they support the sentence requested by a party.[6] In so doing, he may **597 not presume that the Guidelines range is reasonable. See *id.,* at 351, 127 S.Ct. 2456. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."

Gall v. United States, 552 U.S. 38, 49, 128 S. Ct. 586, 596 (2007).

The Supreme Court further stated in footnote 6 of the opinion the factors set forth in United States Code Section 3553 (a) that the court should consider when determining a sentence:

"Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and

characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:

"the need for the sentence imposed—

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

"(B) to afford adequate deterrence to criminal conduct;

"(C) to protect the public from further crimes of the defendant; and

"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2).

The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. § 3553(a) (2000 ed., Supp. V). The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."

Gall at 49, 50 n.6.

The Court further stated:

"But the Guidelines are not mandatory, and thus the "range of choice dictated by the facts of the case" is significantly broadened. Moreover, the Guidelines are only one of the factors to

consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment."

>Gall v. United States, 552 U.S. 38, 48,49.

The court also stated:

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"

>Gall, at 52.

In regards to custody sentences versus probationary sentences the court stated:

>"We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)).[4] Probationers may not leave the **596 judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any

establishment that *49 derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. App. 109."

> Id. at 48,49;  595, 596.

## V. APPLICATION OF FACTS AND LAW

### A. CALCULATE THE APPLICABLE GUIDELINE RANGE.

In the present case the case the Adjusted Offense level is 31. (See PSI paragraph 21.) The defendant clearly accepted responsibility for the offense and the offense level is decreased by two levels. (See PSI paragraph 23.) Defendant further received an additional one point reduction for assisting authorities by timely notifying authorities of his intention to plea guilty. (See PSI paragraph 24). The Total Offense Level in this matter is a 28.

Defendant has no juvenile Adjudications and no Adult criminal Convictions. This results in a Criminal History score of zero. The guideline imprisonment range is 78 to 97 months.

### A. CONSIDERATION OF THE 3553(a) FACTORS.

In determining Mr. Coffman's appropriate sentence the court should consider the 18 U.S.C. Section 3553 factors.

1. **18 USSC Section 3553 (a)(10 – To consider the nature and circumstances of the offense and the history and characteristics of the defendant**.

    In regards to the nature and characteristics of the offense, the defendant does not deny that possesion of child pornography is a very serious offense. His acceptance of responsibility statement shows that he has great remorse for his actions and it is related to the prior sexual abuse that he suffered from a cousin's actions. He states that he was not sexually attracted to children, in no way did he ever entice a child nor did he pleasure himself with this material.

There are no allegations or suggestions of him having any improper physical conduct with children. He understands the gravity and severity of his actions. (See PSI paragraph 10.)

The defendant, Jordan Coffman, was 19 years old at the time of the offense and when his computer was seized. There have been no other allegations of illegal activity by Mr. Coffman since his computer was seized in August of 2015. To view his conduct as immature and ill considered would not be a stretch.

Such characteristic has been found to be a downward variance in other cases. In Gall v. United States, the district court found immaturity to be a reason for a downward departure. The United States Supreme Court stated in Gall,

"Given the dramatic contrast between Gall's behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future. Indeed, his consideration of that factor finds support in our cases. See, *e.g., Johnson v. Texas,* 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (holding that a jury was free to consider a 19–year–old defendant's youth when determining whether there was a probability that he would continue to commit violent acts in the future and stating that " 'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage' " (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)))."

Gall, at 56.

Defendant argues that taking into consideration his immaturity at the time of the offense

is significantly relevant. In Gall, the Supreme Court stated:

"In summary, the District Judge observed that all of Gall's criminal history, "including the present offense, occurred when he was twenty-one-years old or younger" and appeared "to stem from his addictions to drugs and alcohol." *Id.,* at 122, 123. The District Judge appended a long footnote to his discussion of Gall's immaturity. The footnote includes an excerpt from our opinion in *Roper v. Simmons,* 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which quotes a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that " 'often result in impetuous and ill-considered actions.' " *58 The District Judge clearly stated the relevance of these studies in the opening and closing sentences of the footnote: "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five.... [T]he recent [National Institutes of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." App. 123, n. 2."

Gall at 57, 58.

In United States v. Stern, 590 F. Supp. 2d 945, (N.D. Ohio 2008) Judge O'Malley of the Northern District of Ohio cited defendant's age as being a reason for a downward departure.

"The Court finds several strongly mitigating factors when it considers the individual characteristics of this particular defendant. Most critically, it takes note that Stern was 14–years old when he began to view pornographic images and, at that time, he was looking at images of

girls his own age.[6] There is, thus, a fundamental difference between Stern, whose conduct and apparent resultant addiction began during adolescence, and the other defendants convicted of similar crimes who have been sentenced by this Court, other courts in this district, and other courts in the federal system. *Compare* United States v. Polito, 215 Fed.Appx. 354, 357 (5th Cir.2007) (per curiam) (upholding a sentence of probation when use began during adolescence), *with* United States v. McElheney, 524 F.Supp.2d 983, 997 (E.D.Tenn.2007) ("Typically, defendants in [child pornography] cases are first offenders, highly educated, *middle aged,* with solid work histories.") (emphasis added); *see also* Gall v. United States, 552 U.S. 38, ——, 128 S.Ct. 586, 601, 169 L.Ed.2d 445 (2007) ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage." (citation omitted)). Indeed, the Court has conducted a review of the scientific literature in this area and believes there is compelling evidence that the judicial system's longstanding principle of treating youth offenders differently than adult offenders is justified in part based on the unformed nature of the adolescent brain. *See, e.g.,* National Institute of Health Publication 4929, *The Teenage Brain: A Work In Progress* (2008).

This Court does *not* suggest that this difference removes all culpability, but does believe that there are critical distinctions between Stern and the typical defendant. As the Supreme Court has explained:

[A] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.... Even the normal 16–year–old customarily lacks the maturity of an adult. It has been noted that adolescents are overrepresented statistically in virtually every category of reckless behavior.... [J]uveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. This is

explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment.... [T]he character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed. *Roper v. Simmons,* 543 U.S. 551, 570, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). This Court thus considers Stern's age at the time he began his use a factor that weighs heavily in favor of a deviation under § 3553(a). *Accord. Polito,* 215 Fed.Appx. at 357; *see also Honnold,* No. 5:05–CR–0492 (noting that defendant's use of *legal* pornography began at a young age); *cf. United States v. Davis,* 537 F.3d 611, 615 (6th Cir.2008) (finding that a downward variance can be appropriate when a defendant is particularly old); *cf. also, e.g., Prisel,* 2008 WL 4899451, at *10, 316 Fed.Appx. at —— (affirming a sentence that did not include a term of imprisonment for possession of child pornography, although use began during adulthood); *Camiscone,* No. 5:04–CR–00594 (sentencing defendant to probation, although use began as an adult); *United States v. Rausch,* 570 F.Supp.2d 1295 (D.Colo.2008) (same)"

United States v. Stern, 590 F. Supp. 2d 945, 952, 953 (N. D. Ohio 2008).

In the present case, defendant asks this court to adopt the reasoning of the courts in Gall v. United states and United states v. Stern and find that a downward variance is appropriate due to defendant's age and/or immaturity at the time of the offense.

Defendant's conduct for the period of time between the seizure of the electronic devices and indictment are also grounds for downward variance.

In Judge O' Malley's sentencing opinion in United States v. Stern, the court stated:

"Stern's conduct since his arrest also weighs heavily in favor of a downward variance. *See United States v. Gleason,* 277 Fed.Appx. 536, 540 (6th Cir.2008) (quoting with approval a district court that had "certainly departed downward when people have shown extraordinary

post-offense or post-conviction rehabilitation."). Stern graduated from Kent State a year after his arrest. The Court finds it noteworthy and predictive of Stern's future behavior that he committed himself to achieving this productive goal irrespective of the immense and deserved public shame that followed his arrest. *Accord. Polito,* 215 Fed.Appx. at 356 (affirming a district court's refusal to award imprisonment when defendant completed college in the substantial time between initial arrest and formal charges).[7]

Second, Stern sought therapy well in advance of being charged with any crime. Although this factor does not weigh nearly as heavy in Stern's favor as it would had he sought treatment prior to his arrest, the Court nonetheless considers it a positive indication of Stern's commitment to refraining from future criminal conduct. *Accord. Polito,* 215 Fed.Appx. at 356 (finding the same).

Third, Stern has been employed for over a year as a computer game designer and is described as a highly talented employee. He has maintained this job despite his conviction for this offense and the looming threat of punishment from this Court. The Court finds this indicative of Stern's current ability to contribute to society, as well as his commitment to leading an exemplary life from this point forward. *But cf. United States v. Vela–Ontiveros,* No. 08–50030, 2008 WL 4661596, at *1, 297 Fed.Appx. 335, 336 (5th Cir.2008) ("[The defendant] was well educated and had been a school teacher, but [the district court] determined that this was not a mitigating circumstance because [the defendant] had the privilege of being well educated and was capable of making good choices, but instead had made very bad decisions.").

Fourth, Stern has maintained normal and productive relationships with his family, his friends, and even a girlfriend. This is likewise compelling; the Court believes that, particularly in contrast

to the description of Stern's social behavior while engaged in his criminal activity, this indicates a great likelihood that Stern will continue to be a positive and law-abiding member of society."

United States v. Stern, 590 F. Supp. 2d 945, 955 (N.D. Ohio 2008).

     In the present case there have been no allegations of any illegal undertakings by Jordan Coffman since the seizure of his electronic devices on August 13, 2015.  Defendant had complete access to the internet until his arrest on February 14, 2019, some three plus years after the seizure. There have been no allegations of any access to any websites involving child pornography. Defendant was released on February 14, 2019 with conditions. There have been no violations of any of the conditions of pre-trial release.

     At the time of the seizure of the electronics defendant was employed as a sales associate at Gamestop in Sandusky, Ohio . He was employed there until October 2015. Defendant then obtained employment at Target in Sandusky, Ohio from October 2015 until January 2017. Defendant commenced employment at Fin Feather Furr Outfitters in June 2016 until he learned of the pending indictment in February 2019.  While at this employment defendant was responsible for completing and reviewing forms necessary to legally purchase firearms. Defendant fulfilled this task and was given the additional duty of checking other employees' forms which were sent to the FBI and ATF. Additionally, defendant assisted in stopping two "straw' purchases of firearms.

     Defendant disclosed the past sexual abuse following the indictment in this matter. The perpetrator of these acts committed suicide in 2018. Defendant has sought and is receiving counseling and proper medication for his diagnoses.

     Defendant has a supportive family. He has resided with his mother his whole life and has good relationship with her. Defendant has been in a romantic relationship since 2016  with

Katelynn Steinhour and is presently engaged to her.

In the present case, defendant asks this court to consider an additional downward variance due to the prior sexual abuse suffered by the defendant between the ages of seven and nine. Shortly after this abuse occurred defendant was diagnosed with OCD and acid reflux. There is also a more recent diagnosis for PTSD which the defendant is receiving counseling and medication for.

"Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. Additionally, "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.4. Lovato is a forty-eight year old mentally ill woman with numerous physical impairments and a traumatic childhood. There is some dispute whether Lovato's diagnosis should be schizophrenia, post-traumatic stress disorder, or generalized anxiety disorder, but she suffers from anxiety, antisocial behavior, and paranoia, and she has been receiving SSI benefits since at least 1994 based on her mental disability and her inability to engage in gainful employment. Lovato has rheumatoid arthritis. Her mother was an alcoholic who abandoned her when she was very young. Her father was an alcoholic who beat her and her siblings, and Lovato spent time in a foster home when she was twelve-years-old. The Court believes these circumstances, while not so extraordinary to warrant another departure, warrant a variance from the advisory sentencing guideline sentence to a range that is equivalent to one with an adjusted offense level reduction of three levels. An offense level of 7 and a criminal history of IV produces a guideline sentence of 8 to 14 months, and would make Lovato eligible for a sentence of probation.

<u>United States v. Lovato</u>, 798 F. Supp. 2d 1257, 1259, 1260 (D. New Mexico 2011).

In the present case there are factors which support a downward variance from the advisory guideline range sentence.

2. **18 U.S.C. 3553 (a)(2)-The need for the sentence imposed**

   (A) <u>**To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**</u>

   (B) <u>**To afford adequate deterrence to criminal conduct'**</u>

   (C) <u>**To protect the public from further crimes of the Defendant; and**</u>

   (D) <u>**To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**</u>

A proper sentence for the court to impose in this matter is one that is sufficient but greater than necessary to comply with the purposes of sentencing. Defendant respectfully requests that the proper sentence in this matter would be a sentence of probation or a sentence of home detention or a sentence of community detention followed by a period of supervised release.

The present guideline range sentence is 76 months to 97 months. Defendant submits that a sentence below the guideline range is sufficent to punish the defendant and show respect for the law. Defendant has no prior criminal charges or convictions. He has led a law abiding life since August 2015.

In the present case there are factors which support a downward variance from a guideline Sentence. Defendant has started rehabilitation for his mental health issues, has been law abiding

since 2015 and maintained employment until the time of his arrest.

### 3. 18 U.S.C. 3553 (a)(3)-The kinds of sentences available

Defendant submits that a sentence of probation or a sentence below the guideline sentence range is available. In Gall, the Supreme Court in a footnote cited:

"See also Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13–14 (1957) ("Probation is not granted out of a spirit of leniency .... As the Wickersham Commission said, probation is not merely 'letting an offender off easily' "); 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society .... Often these conditions comprehensively regulate significant facets of their day-to-day lives .... They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist")."

Gall, at 48 n.4.

A sentence of probation or one which is substantially lower than a guideline range sentence would be sufficent in this matter. Defendant has been law abiding since 2015, has entered into treatment and has a supportive family.

### 4. 18 U.S.C. Section 3553(a)(4)-The kinds of sentence and sentencing range.

Under the guidelines, the defendant is subject to a sentence of 78 to 96 months. Under the guidelines, because the applicable guideline range is in Zone D of the sentencing Guidelines, defendant is ineligible for probation.

5. 18 U.S.C. 3553 (a)(5)- The need to avoid unwarranted sentence disparities among defendants with similar records who have been guilty of similar conduct.

The defendant states that are no co-defendants in this matter.

There are two similar cases in this district of a similar offense and similar criminal history. In <u>United States v. Camiscione</u>, Case No. 5:04CR594, defendant was ultimately sentenced to 1 day in custody of the U.S. Marshal's Office followed by 16 weekends if intermittent confinement followed by 6 months of home detention. In <u>United States v. Stern</u>, Case No. 5:07-00524, defendant was sentenced to 12 months and one day followed by 10 years of supervised release.

6. **18 U.S.C. 3553(a)(7)-The need to provide any restitution to any victims of the offense**.

While the pre-sentence report does not have any claims for restitution, there is a strong possibility of a restitution request pursuant to the Mt. Lime litigation.

## V. CONCLUSION

For all of the reasons set forth in the foregoing Sentencing brief, the defendant, Jordan Coffman, respectfully requests that this Court grant him a variance from the applicable guideline sentence and impose upon him the following sentence:

1. A sentence of probation;

    -or-

2. A sentence of house detention;

    -or-

3. A sentence of community detention;

    -or-

4. If none of the above are found to be appropriate, then a minimal sentence below the advisory guideline range.

Respectfully submitted,

/s/Merle R. Dech, Jr.
Merle R. Dech, Jr. (0055835)
610 Adams Street, 2nd Floor
Toledo, Ohio 43604
TEL: (419) 241-5506
FAX: (419) 242-3442
mdechesq@hotmail.com
Attorney for Defendant

Date: February 18, 2020

CERTIFICATION

This is to certify that on February 18, 2020 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the courts ECF system.

/s/ Merle R. Dech Jr.